ROWLEY *v.* WHITE.

1. LIMITATION OF ACTIONS—ACKNOWLEDGMENT IN WRITING REVIVES CLAIM.

Where, after a mother's claim against her son was outlawed, he wrote her a letter acknowledging his indebtedness and promising payment, and thereafter until her death yearly paid her $50 on said claim, under 3 Comp. Laws 1915, §§ 12331, 12335, his action had the effect of reviving the claim.

2. NEW TRIAL—EVIDENCE—SUFFICIENCY—EXECUTORS AND ADMINISTRATORS.

Where, in an action by the administrator of a mother's estate against decedent's son for moneys in his hands belonging to her estate, defendant pleaded the statute of limitations and payment, and both defenses depended upon questions of fact which were determined in plaintiff's favor, and said determination was well supported by the testimony, the trial court was not in error in refusing a new trial.

Case-made from Eaton; Smith (Clement), J. Submitted April 4, 1922. (Docket No. 13.) Decided July 20, 1922.

Assumpsit by George W. Rowley, administrator of the estate of Louisa J. White, deceased, against Allen M. White for moneys had and received. Judgment for plaintiff. Defendant appeals. Affirmed.

*Rosslyn L. Sowers,* for appellant.

*Peters & Marshall,* for appellee.

BIRD, J. The defendant, Allen M. White, is the son of Louisa J. White, deceased. The husband and father of these parties died about the year 1900, in Eaton county, leaving Louisa J. life insurance in the

sum of $2,000. His estate consisted of one farm of 80 acres and another of 40. Also personal farm property and a small amount of money at interest. After the father's death the defendant appears to have taken charge of his mother's financial matters. He collected money for her and loaned her money and took notes and mortgages in his own name and furnished her with money from time to time. When the 80 acres was sold the widow's share was $800. Her share of the personal farm property was $375. These sums were retained by defendant and he gave his mother two notes for these sums. The widow's share of the 40 acres was $500. Beside these sums defendant came into possession of several hundred dollars. Defendant's management continued down to the time of her death, which occurred in 1917. After her decease plaintiff was appointed as administrator of her estate and this suit was begun to recover from defendant the money which he had in his hands belonging to the estate. Defendant pleaded payment and the statute of limitations under the general issue. Several issues of fact developed during the trial and these were submitted to the jury. They returned a verdict for plaintiff of $1,795.15.

Defendant contended that if there were any unpaid claims they were old and stale and no recovery could be had because the statute of limitations had run against them. Plaintiff replies to this contention that in 1908 defendant wrote to his mother the following letter:

"I owe you $1,650 and you will get all of it and more if you need it. * * * You will get $50 interest money of James Langdon about September 19th; $10 of John Huebel, I think in November; $12.50 of Chas. Kenneberg in December. And if you want, Kenneberg will pay the principal, $250. This and Langdon's is secured by real estate mortgage. I will guarantee Huebel's, if I do not pay before there will

be $10 interest money in 1909. So don't worry. I could have turned these papers over to you before I left, but I thought they are fully as safe in my hands as in other people's."

It is contended by plaintiff that if these two notes and the item of $500 were outlawed at that time this letter revived them and it is shown by plaintiff that from that date to the date of her death defendant regularly paid his mother $50 a year on his indebtedness. This was shown by a grandchild with whom she lived. In support of this contention plaintiff cites 3 Comp. Laws 1915, §§ 12331, 12335, and the case of *Neilands* v. *Wright*, 134 Mich. 77.

We think if the questions of fact in these conclusions are decided in favor of the plaintiff that counsel's conclusions are correct. The payment of $50 a year was denied and was, therefore, left to the jury. The question whether defendant wrote the letter heretofore quoted was left to the jury along with the other questions of fact, and we see no occasion for disturbing the conclusion which they have reached.

On February 9, 1909, defendant, at the request of his mother, assigned a $1,000 mortgage given by one Langdon to Ethel Lawton, her grandchild. Defendant insists this ought to have been applied on his alleged indebtedness to his mother and that this question should have been more fully submitted to the jury. There were several items in the account which were contested. The trial court did not mention all of the items in issue but placed the accounts of both parties before the jury and instructed them to determine what defendant should be charged with and what items he should be credited with. In closing his charge he instructed them:

"I instruct you that you should, from the evidence in the case, determine the amount, if anything, owing by the defendant to his mother, Louisa J. White, and

the amount of property in his hands belonging to the said Louisa J. White in the year 1908. You should then determine what property in the hands of defendant belonging to his mother has been returned by him to her or transferred to others by her, by her requested, and what sum he has paid upon the indebtedness to her."

The application of the statute of limitations depended on the questions of fact. The questions of payment were likewise dependent upon questions of fact. These were all submitted to the jury and they found a balance in favor of the estate. The conclusion of the jury is well supported by the testimony and we think the trial court was in no error in refusing a new trial.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK, SHARPE, MOORE, and STEERE, JJ., concurred.